Filed 1/23/26  P. v. Green CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B336366 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. MA057061 |
| v. | |
| COREY GREEN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kathleen Blanchard, Judge.  Affirmed and remanded with directions.

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Lauren N. Guber, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Corey Green appeals the judgment entered for his 2014 convictions for three violent sex offenses after the superior court recalled his original sentence and resentenced him under Penal Code section 1172.75.[1]  He argues that the court abused its discretion when it declined to dismiss the prior serious felony conviction enhancements as to each count.  He also argues that pursuant to section 1465.9, we should vacate the balance of the restitution fine.  We agree with both arguments.  We vacate the sentence and remand for resentencing with directions to reconsider the request for dismissal of the enhancements under section 1385 according to *People v. Gonzalez* (2024) 103 Cal.App.5th 215 (*Gonzalez*).  We also direct the superior court to vacate the balance of the restitution fine.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     Facts[2]

In the early afternoon of July 11, 2012, Green approached M. who was working on her car in a parking lot behind an AutoZone store in Palmdale, California.  M. declined Green's offers to help.  M. further declined Green's offer to pay her for sexual intercourse.

When M. resumed working on the car, Green approached her from behind.  He placed one arm across her chest, and the other on her lower abdomen.  Green reached inside the front of

---

[1]     All further undesignated statutory references are to the Penal Code.

[2]     We refer to the factual background from the opinion in *People v. Green* (Feb. 19, 2015, B254805) [nonpub. opn.], which affirmed the judgment of conviction.

2

M.'s pants and forcefully inserted a finger inside her vagina. M. pushed Green away and told him to stop. Green grabbed M.'s arm and held it tightly. Green let her go when a store employee walked past them.

Green approached M. again. He grabbed M. and forced her to her knees. Green held M.'s head and forcefully inserted his penis into her mouth. M. pulled her head from Green and walked away from him.

Green stood by M. as another store employee walked past them. Green opened the driver's side rear passenger door and threw M. onto her stomach in the backseat. Green pulled off M.'s pants and underwear and told her to spread her vagina for his penis. M. believed she heard photographs being taken and told Green not to take pictures. Green denied taking photographs. and forcefully inserted his fingers into M.'s vagina. Suddenly, Green jumped up, slammed the car door against M.'s legs, and told her to hurry up and get dressed.

M. got dressed and exited the car. M. saw another store employee and mouthed "help me" to her. The employee nodded at M. and drove away. The employee returned and told her coworkers what she had seen. The coworkers approached Green and M. One of the coworkers told Green that they were calling the police. Green walked away. He was arrested nearby with a cell phone that contained video recordings of the incident.

## II.    Procedure

### a.    *Trial court proceedings*

A jury convicted Green of forcible oral copulation (§ 288a, subd. (c)(2)(a)[3]; count 1), and two counts of sexual penetration by a foreign object (§ 289, subd. (a)(1)(a); counts 2 & 3). The jury also found that Green was previously convicted of forcible rape (§ 261, subd. (a)(2)), making him eligible for sentencing under the One Strike Sex law (§ 667.61, subds. (a) & (d)) and the habitual sex offender law (§ 667.71).

On December 18, 2013, the trial court found true allegations that Green served a prior prison term under section 667.5, subdivision (b), and was convicted of a prior serious felony conviction under section 667, subdivision (a)(1), which was also alleged as a prior felony conviction under the Three Strikes law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(e)).

On January 9, 2014, the trial court imposed consecutive indeterminate terms for each of the three counts under the One Strike Sex law. The court doubled each minimum term of 25 years under the Three Strikes law. The sentence included five years for each count for the prior serious felony conviction enhancement under section 667, subdivision (a)(1) and one year for the prior prison term enhancement under section 667.5, subdivision (b). The total aggregate sentence was 150 years to life, plus a determinate term of 16 years.

Additionally, the trial court imposed a restitution fine of $10,000 under section 1202.4, subdivision (b) and imposed and

---

[3]    The legislature renumbered former section 288a to section 287. (Stats. 2018, ch. 423, § 49, pp. 3215–3218, eff. Jan. 1, 2019.)

4

stayed $10,000 for a parole revocation restitution fine under section 1202.45. As to each count, the court also imposed a $40 court operations assessment (§ 1465.8, subd. (a)(1)) and a $30 criminal facility assessment (Gov. Code, § 70373, subd. (a)(1)).

Green timely appealed. On February 19, 2015, this court affirmed the judgment.[4]

### b. *Resentencing*

On July 1, 2022, CDCR identified Green as a person serving a sentence that included an invalid enhancement under section 667.5, subdivision (b).

On March 26, 2024, the superior court conducted a resentencing hearing pursuant to section 1172.75. Green's petition for resentencing requested that the court dismiss the invalid prior prison term enhancement, the prior serious felony conviction enhancement, and the prior felony conviction under the Three Strikes law. The petition highlighted Green's lack of rule violations and disciplinary actions since his commitment to state prison in 2014. According to the exhibits submitted with the petition, Green's security level was reduced due to good behavior and compliance with prison rules. Green also completed various rehabilitative programs while in prison. The petition identified the mitigating factors of multiple enhancements in a single case (§ 1385, subd. (c)(2)(B)) and an enhancement based on a prior conviction over five years old (§ 1385, subd. (c)(2)(H)).

Green's petition noted that he was 52 years old and would continue to serve the indeterminate sentence even if the court granted his requests. It asserted that he posed no immediate

---

[4]     *People v. Green* (Feb. 19, 2015, B254805) [nonpub. opn.].

5

public safety concern based on his age and the remaining term. Green's defense counsel reiterated the same points during the resentencing hearing.

The superior court dismissed the prior prison term enhancement under section 667.5, subdivision (b). But it denied Green's requests to dismiss the prior felony conviction under the Three Strikes law and the prior serious felony conviction enhancement as to each count.

Again, as to each count, the superior court imposed consecutive terms under the One Strike Sex law. It doubled the minimum term for each count under the Three Strikes law. The court also imposed an additional five years to each count for the serious prior felony conviction enhancement under section 667, subdivision (a)(1). The total indeterminate term was 150 years to life, plus a determinate term of 15 years. The court reimposed the fines and fees, including the restitution fine, in their original amounts.

On March 28, 2024, Green filed a notice of appeal.

## DISCUSSION

Green raises two challenges on appeal. First, he contends that the superior court abused its discretion when it declined to dismiss the prior serious felony conviction enhancement as to each count based on its application of an incorrect standard for the public safety exception under section 1385, subdivision (c)(2). Second, Green asserts that any remaining balance for the restitution fine imposed by the original sentencing court must be vacated pursuant to section 1465.9. We agree with both arguments.

## I.      Section 1385

Effective January 1, 2022, Senate Bill No. 81 amended section 1385 to add subdivision (c). (Stats. 2021, ch. 721, § 1.) Section 1385, subdivision (c)(1) provides, "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so . . . ." Section 1385, subdivision (c)(2) requires that a sentencing court give "great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present." One or more mitigating circumstances "weighs greatly in favor of dismissing the enhancement." (§ 1385, subd. (c)(2).)

The statute provides an exception to the section 1385, subdivision (c)(2) requirement when "the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).) Section 1385, subdivision (c)(2) further states that " '[e]ndanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."

7

When a trial court finds that dismissal of an enhancement would endanger public safety, it must not exclusively consider whether the defendant currently poses a danger to the public. (*Gonzalez*, *supra*, 103 Cal.App.5th at p. 228.) "Although the current dangerousness of the [petitioner] is an appropriate factor to consider, as it will have some bearing on whether dismissing the enhancement would endanger the public, a crucial part of the inquiry is how the dismissal of the enhancement will impact the length of the defendant's sentence." (*Ibid*.) The reviewing court in *Gonzalez* illustrated this point by contrasting a "currently dangerous defendant who will be released from prison within a short timeframe" with a currently dangerous defendant "who has no prospect of release from prison until he is elderly." (*Ibid*.) A trial court would find the former to pose a greater danger than the latter.[5]

"[A]bsent a finding that dismissal would endanger public safety, a court retains the discretion to impose or dismiss enhancements provided that it assigns significant value to the enumerated mitigating circumstances when they are present." (*People v. Walker* (2024) 16 Cal.5th 1024, 1029.) "Stated simply, if the court does not conclude that dismissal would endanger public safety, then mitigating circumstances strongly favor dismissing the enhancement. But ultimately, the court must determine whether dismissal is in the furtherance of justice." (*Id*. at p. 1036.)

---

[5] *Gonzalez* also mentioned that for defendants serving indeterminate sentences, "release from prison is contingent on review by the Board of Parole Hearings," which "will act as a safety valve against a release that would endanger the public." (*Gonzalez*, *supra*, 103 Cal.App.5th at p. 228.)

We review a trial court's decision not to strike sentencing enhancements under section 1385 for abuse of discretion. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298.) We must not disturb an exercise of discretion on appeal " ' " '*except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' " ' " (*Ibid.*) A court abuses its discretion if it bases " 'its decision on impermissible factors . . . or on an incorrect legal standard.' [Citations.]" (*Gonzalez*, *supra*, 103 Cal.App.5th at p. 225.)

During the resentencing hearing, the prosecutor argued that the superior court should not reduce the sentence beyond striking the prior prison term enhancement because Green posed a threat to public safety based on the underlying facts of the case.[6] In response, Green's counsel urged the court not to focus on his current risk to public safety. She reasoned that Green would still have to serve three consecutive life sentences even if the court struck the prior serious felony conviction enhancements.[7]

---

[6] The prosecutor argued:

"The People would submit on the 667.5(b) allegation. Beyond that, the facts demonstrate an incredibly violent sexual offense by a stranger on a stranger. [¶] The case has considerable issues regarding public safety, and I think that on that alone, the People would object to any—the court exercising its discretion to strike any prior enhancements or resentence in full."

[7] Defense counsel stated:

"I just want to clarify that I don't think public safety is an issue the same way it would be if we were

9

The superior court highlighted Green's prior conviction for forcible rape (§ 261, subd. (a)(2)) in 2005, his prior conviction for failure to register as a sex offender (§ 290) in 2010, and the facts of the underlying offenses which occurred in 2012. The court acknowledged Green's participation in classes and his lack of rule violations while in prison. The court concluded, "And, in this case, given these facts and the defendant's criminal history, the court does not find that the classes that he's taken and his lack of discipline in prison is enough for the court to find that it was in the–that it is in the interest of justice to strike that five-year prior as to any of the three indeterminate terms here." This discussion of the underlying offenses and Green's prior convictions does not suggest a forward-looking inquiry. Instead, the court relied on past conduct to determine Green's present dangerousness. The court applied a legal standard that was not consistent with *Gonzalez*. (*Gonzalez*, *supra*, 103 Cal.App.5th at pp. 228, 230–231.)

Like the defendant in *Gonzalez*, Green is serving an indeterminate sentence. Green's minimum term before parole

---

asking for release. [¶] The request made today is for the court to strike the prior strike and also consider striking the three five-year priors that were imposed. [¶] Even if the court struck all of that, Mr. Green would still be left with three consecutive life terms to serve, and so there is no risk–immediate risk to the public. It would really only give him an opportunity to [someday] be paroled."

Based on the arguments by defense counsel during the resentencing hearing and in the petition, we reject the Attorney General's contention that Green forfeited any challenge to the superior court's consideration of the public safety exception.

eligibility on his indeterminate sentence alone is 150 years. He will not be released on parole until far beyond a lifespan, even if the 15 years for the enhancements are stricken. We recognize that a forward-looking inquiry into the risk of endangering public safety considers past conduct to predict the likelihood of future behavior. But the record does not demonstrate that the superior court considered whether Green would endanger public safety if the enhancements were stricken and he was still subject to the indeterminate term. We conclude that the superior court abused its discretion by failing to consider Green's future dangerousness if the enhancements were stricken within the context of his indeterminate sentence. (*Gonzalez*, *supra*, 103 Cal.App.5th at pp. 230–231.)

We do not question the superior court's finding that Green is currently dangerous based on the egregiousness of the underlying convictions for violent sex offenses and his prior conviction for a violent sex offense, notwithstanding his efforts at rehabilitation while in prison. We only hold that the superior court's "singular focus" on Green's past dangerous conduct overlooked the "crucial part of the inquiry" required by *Gonzalez*, that is, whether dismissing the enhancements "will impact the length of the defendant's sentence." (*Gonzalez*, *supra*, 103 Cal.App.5th at p. 228.) This consideration was especially significant for someone like Green "who has no prospect of release from prison" during a reasonable life expectancy. (*Ibid*.)

The Attorney General argues that we should presume that the superior court " ' "correctly applied the law" ' " and conducted a forward-thinking inquiry as to Green's dangerousness. (*People v. Brugman* (2021) 62 Cal.App.5th 608, 637.) But the superior court did not have the benefit of *Gonzalez* on the date of

11

resentencing.[8]  We cannot presume the trial court knew a standard that did not yet exist.  (*People v. Chambers* (1982) 136 Cal.App.3d 444, 457 [presumption does not apply when the sentencing law is not yet established]; see *People v. Jones* (2022) 86 Cal.App.5th 1076, 1092.)

The superior court's comments gave no indication of how it would have ruled if it had applied the correct legal standard. Specifically, the record does not "clearly indicate" whether the superior court would still have decided not to dismiss the enhancements had it considered whether dismissal would cause a future danger to public safety.  (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391; *People v. Salazar* (2023) 15 Cal.5th 416, 424.) "[T]he appropriate remedy is to remand for resentencing." (*Gutierrez*, at p. 1391; *Salazar*, at p. 424.)  On remand, in determining the applicability of the public safety exception under section 1385, subdivision (c)(2), the court must apply the standard established by *Gonzalez*.  We express no position as to how the court should exercise its discretion.

## II.    Restitution fine and section 1465.9

Green argues that in accordance with section 1465.9, we must remand the matter and direct the superior court to vacate any balance of the restitution fine imposed pursuant to section 1202.4, subdivision (b).  The Attorney General concedes.  We agree with Green and accept the Attorney General's concession.

Assembly Bill No. 1869 (2019–2020 Reg. Sess.) added section 1465.9 to "eliminate the range of administrative fees . . .

---

[8]    Green's resentencing hearing was held on March 26, 2024. *Gonzalez* was filed on June 27, 2024.

to fund elements of the criminal legal system and . . . eliminate all outstanding debt incurred as a result of the imposition of administrative fees." (§ 1465.9, subd. (a).) Assembly Bill No. 177 (2021–2022 Reg. Sess.) amended section 1465.9 to mandate that, on or after January 1, 2022, a court deem "the balance of any court-imposed costs" under section 1202.4 (as it read on December 31, 2021) unenforceable and uncollectible.[9] (§ 1465.9, subd. (b).) Section 1465.9, subdivision (b) also mandated that the court vacate any portion of a judgment imposing costs under section 1202.4.

Effective January 1, 2025,[10] Assembly Bill No. 1186 (2023–2024 Reg. Sess.) also added subdivision (d) to section 1465.9, stating, "Upon the expiration of 10 years after the date of imposition of a restitution fine pursuant to Section 1202.4, the balance, including any collection fees, shall be unenforceable and uncollectible and any portion of a judgment imposing those fines shall be vacated." This amendment broadened the previous mandate to include any balance of the restitution fine and not limit it to costs.

---

[9]     Section 1465.9 also includes the costs imposed pursuant to sections 1001.15, 1001.16, 1001.90, 1202.4, 1203.1, 1203.1ab, 1203.1c, 1203.1m, 1203.4a, 1203.9, 1205, 1214.5, 2085.5, 2085.6, or 2085.7. (§ 1465.9. subd. (b).)

[10]     A statute enacted during the regular session of the Legislature becomes effective on January 1 of the year following its enactment except where the statute is passed as an urgency measure and becomes effective sooner. (Cal. Const., art. IV, § 7, subd. (c); Gov. Code, § 9600, subd. (a); *People v. Camba* (1996) 50 Cal.App.4th 857, 865.)

13

Section 1465.9, subdivision (d) became effective after the superior court conducted the resentencing hearing on March 26, 2024, but it applies because the judgment after the resentencing is not yet final.[11] " ' "[I]f the amendatory statute lessening punishment . . . becomes effective prior to the date the judgment of conviction becomes final then . . . it, and not the old statute in effect when the prohibited act was committed, applies." ' " (*Covarrubias*, *supra*, 1 Cal.5th at p. 935.)

Section 1465.9, subdivision (d), expressly defines the 10-year period to run after the "date of imposition" of the restitution fine. Here, the trial court imposed the restitution fine on January 9, 2014. The superior court must vacate the balance of the restitution fine because more than 10 years have elapsed since it was originally imposed.

---

[11]  " ' "[F]or the purpose of determining retroactive application of an amendment to a criminal statute, a judgment is not final until the time for petitioning for a writ of certiorari in the United States Supreme Court has passed." ' [Citation.]" (*People v. Covarrubias* (2016) 1 Cal.5th 838, 935 (*Covarrubias*).)

## DISPOSITION

We vacate the sentence and remand the matter for resentencing with directions to reconsider the request for dismissal of the enhancements under section 1385, in compliance with *Gonzalez, supra*, 103 Cal.App.5th at page 232. On remand, the superior court is also to vacate the balance of the restitution fine which was originally imposed on January 9, 2014, in accordance with section 1465.9, subdivision (d).

The judgment is otherwise affirmed. Upon resentencing, the superior court is to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

HANASONO, J.

We concur:

EDMON, P. J.

EGERTON, J.

15